316 So.2d 380 (1975)
STATE of Louisiana
v.
Peter M. WRIGHT and James H. Munson.
No. 55974.
Supreme Court of Louisiana.
June 23, 1975.
*381 Lenon J. Parent, Jr., Chauppette, Genin, Mendoza & Parent, Marrero, George C. Ehmig, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., John F. Tooley, Asst. Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., New Orleans, for plaintiff-appellee.
CALOGERO, Justice.
Defendants, Peter M. Wright and James H. Munson, were charged by Bill of Information with having committed the crime of armed robbery. After trial on March 11, 1974 each was found guilty as charged. Defendant Wright was sentenced to serve 15 years at hard labor without benefit of parole, probation or suspension of sentence. Defendant Munson was sentenced to serve 40 years at hard labor without benefit of parole, probation or suspension of sentence.
Each has appealed to this Court relying on the identical four Bills of Exceptions.
Bills of Exceptions No. 1.
These Bills of Exceptions arose from the trial court's overruling defendants' objection to the jury venire on the ground that women were systematically excluded from jury service.
This case was tried prior to Taylor v. Louisiana, 419 U.S. 552, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) which held Louisiana had unconstitutionally excluded women from juries. In Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975) the United States Supreme Court held that Taylor would not be applied retroactively as a matter of federal law.
This Court has likewise declined to give retroactive effect to the Taylor holding. State v. Rester, 309 So.2d 321 (La.1975).
As this case was tried prior to the United States Supreme Court decision in Taylor these bills are without merit.
Bills of Exceptions No. 2.
During the course of voir dire one member of the jury venire indicated in response to a question by the trial judge that he had heard a discussion of this case.
His statements were:
"PROSPECTIVE JUROR MANARD M. LAGASS: I heard it discussed this morning in the hall.
"THE COURT: By whom?
"MR. LAGASS: By two people that were involved in this thing.
"THE COURT: You heard it from these people?
"MR. LAGASS: Yes, I heard the weapon described as a .38 caliber revolver.
"THE COURT: I am going to excuse Mr. Lagass." Tr. p. 6-7.
Defendants then made a motion for a mistrial. The trial judge denied the motion but gave an admonition. Bills of Exceptions *382 No. 2 were reserved incident to this occurrence.
Defendants argue that a mistrial should have been granted under C.Cr.P. Art. 771 which provides as follows:
"Art. 771. Admonition
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) . . .
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
It is argued that the trial judge committed prejudicial error when he admonished only those members of the venire who were in the jury box, rather than all of the veniremen in the courtroom. Additionally defendants argue that the trial judge committed error in not questioning the juror to determine if that knowledge would have prejudiced his deliberation.
Further it is argued that the possible prejudice to the defendants could not be cured by admonition and the defendants were thus convicted by evidence which did not come from the witness stand and to which they were denied the right of cross-examination.
The trial judge's admonition, while perhaps addressed to the members of the jury venire in the jury box, was surely heard by such of the veniremen in the Courtroom as heard the remark of the prospective juror in the first place and was sufficient to prevent any prejudice to defendant. Furthermore, the simple reference to a .38 caliber revolver being involved in the case, would not likely be, nor was it shown to have been, prejudicial to the defendants. Finally the excusal of the prospective juror by the trial judge was not an abuse of the discretion vested in him by C.Cr.P. Art. 783.
These bills are without merit.
Bills of Exceptions No. 3.
These bills arise from the trial court's overruling defendants' objections to the in court identification of one of the defendants by the victim.
The argument by defendants is that there were only three blacks in the courtroom (the two defendants and one juror), and that this circumstance was impermissibly suggestive. Further, it is argued, the State had ample opportunity to hold a pretrial lineup prior to trial had it chosen to do so, rather than simply to rely on the one-on-one in court identification.
Defendant has no right to a pretrial line-up. State v. Brooks, 294 So.2d 503 (La.1974). Nor do we find the in court identification procedure to have been impermissibly suggestive. The witness had an ample opportunity to view the defendant at the scene of the crime (a Time Saver store).
State v. Newman, 283 So.2d 756, (La.1973) relied upon by defendants is distinguishable in several respects, including the circumstances attending the asserted suggestive procedures, and significant differences with respect to the independent source for the in court identification, in the respective cases.
The bills are without merit.
*383 Bills of Exceptions No. 4.
At the scene of the arrest, some 15 to 20 minutes after there had been committed an armed robbery of a Time Saver Food Store, defendant Munson said to the arresting officer, "You got me. I did it." That statement was not reflected in the officer's report. The prosecutor had opened his file to defendants' attorneys and, of course, the fact that defendant Munson had made this oral statement was not reflected therein. On the morning of trial, while the prosecutor and defense attorneys were at the coffee stand in the Courthouse, the officer approached them and related to them something about his report's not having included an oral statement made by defendant Munson at the scene of the arrest.[1] The prosecutor thereupon had a written notice prepared and before trial commenced, delivered to defendants' attorneys this notice of intention to use statement, as required by C.Cr.P. Art. 768.[2]
Near the conclusion of the State's case the arresting officer responded to a question by the prosecutor concerning what was said, by relating that after Munson was arrested and advised of his rights, he said, "You got me, I'm guilty." Defense attorneys objected and the jury was removed from the courtroom. After further testimony relative to Munson's statement, defendants objected to its admission into evidence and perfected Bill No. 4 when their objection was overruled. The basis for the objection was two-fold. Defendants complained that they had not received adequate prior notice (of the statement and its content). And defendant Wright's counsel (with Munson's counsel generally joining in the same objection) argued that the statement should be excluded because had he received more timely notice and more specific advice as to the content of the statement he would have been able prior to trial, to move for and secure a severance.
There was no surprise to defendants when the statement was offered at trial. The record reflects that defendants' attorneys were with the prosecutor when he learned that the police officer had a statement which had not been included in his report. Additionally, the State gave timely notice of its intention to introduce the statement as required by C.Cr.P. Art. 768.[3]
Thus, the first basis for the objection had no merit.
The second argument, indirectly based upon an asserted deprivation of opportunity to move timely for a severance, is of course applicable only to the defendant Wright, for it is only he who could have complained about being jointly tried with a defendant whose out of court statement rather than in court testimony was to be presented by the State.
Defendants' objection to the admissibility of the statement might more appropriately have been directed, in accordance with defendants' *384 underlying contention, at the fact that it was inadmissible under Bruton v. United States, 391 U.S. 128, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), for the United States Supreme Court in that case held inadmissible a statement by one defendant implicating a co-defendant because in violation of the Sixth Amendment's confrontation clause.
Defendant's argument that "justice requires a severance" under Art. 704 of the Code of Criminal Procedure[4] where a confession or admission made by a defendant is intended to be used by the State against a co-defendant, is one based essentially upon the denial of a Sixth Amendment confrontation right.
We will thus consider the objection to the admissibility of the statement as though it were founded upon Bruton.
In this case, the Time Saver Food Store at 3801 Veterans Boulevard, was robbed at about 7:00 p.m. Approximately 15 or 20 minutes after the robbery, a police officer driving an Intoximeter van recognized the defendants as resembling the description of the robbers, a description which had been dispatched from the scene of the crime a few minutes before by other police officers called to the scene. He stopped the defendants, called for assistance, got the defendants out of the car, gave them their rights, handcuffed and separated them. He was informed a few minutes later by another officer that defendant Munson wanted to tell him something. He went to defendant Munson who then told him "You got me. I did it."
The statement by Munson may or may not have been a confession or admission of complicity in the robbery of the Time Saver Food Store. Interpretation of the statement under all of the attending circumstances was, of course, a question for the jury to decide.
For the purpose of defendant Wright's objection, however, we will assume that the better interpretation of the statement was that it was an inculpatory admission or confession by Munson in which he was in effect saying "You've got me. I robbed the Time Saver Food Store."
However, damaging it may have been to defendant Wright's case (i.e., the man with whom he was arrested having confessed his own complicity), the statement nonetheless did not standing alone implicate the co-defendant Wright in the commission of the Time Saver Food Store robbery. Not only did the statement not accuse Wright of having committed the robbery, but it did not even, by way of assertion, establish any fact upon which the State relied in proving their case against Wright. Munson's statement did not anymore implicate Wright than did any other equally damaging State evidence against Munson, the person with whom fortunately or unfortunately Wright was arrested in an automobile some 15 or 20 minutes following the perpetration of the charged crime.
This case is unlike the situation in State v. Herman, 304 So.2d 322 (La. 1975), where the co-defendant's statement asserted facts relative to the complaining defendant's activity, namely, that the complaining defendant had been operating the automobile shortly before that automobile was found to have been involved in the subject armed robbery.
Bruton does not require the exclusion of Munson's personally inculpating oral statement. Accordingly, defendant Wright's unasserted objection (that the statement was inadmissible under Bruton) *385 and his asserted objection (that non-timely and non-specific advice as to the content of Munson's statement deprived him of an opportunity prior to trial to move timely for a severance) are both without merit.
Accordingly there is no merit in Bill No. 4.
For the above assigned reasons the conviction and sentence are affirmed.
DIXON, J., dissents as to Wright, believing State v. Herman to be indistinguishable.
NOTES
[1] The record does not clearly indicate what precisely the officer told the three attorneys. The inference to be drawn from a statement of the prosecutor in argument during trial is that the officer related the substance of Munson's oral inculpatory admission. The minimal assertion of the officer, from our interpretation of the unclear record, was that Munson had made an oral inculpatory statement of some sort.
[2] The document, entitled "Use of Statements related,

"It is the intention of the District Attorney to use the oral inculpatory and exculpatory statements, admissions, and/or confessions of the defendant in the trial of the merits of this case."
C.Cr.P. Art. 768 provides:
If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
[3] But see State of Louisiana v. Charles Wayne Sneed, 316 So.2d 372 (La.1975) decided this date.
[4] See Section 2 of Article 704 and paragraph (c)(1) of the Official Revision Comment thereunder, and the cases State v. Birbiglia, 149 La. 4, 88 So. 533 (1924), State v. Lamotte, 168 La. 837, 123 So. 591 (1929), State v. Goury, 184 La. 955, 168 So. 113 (1936), and State v. Livsey, 190 La. 474, 182 So. 576 (1938).